CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 05 2015

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| COREY SMITH, | ) | CASE NO. 7:14CV00168 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| ELY, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Corey Jermaine Smith, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, with supplemental claims under state law. Smith alleges that a group of correctional officers used excessive force against him or merely watched without intervening as others used excessive force. Smith also alleges that the defendant nurse at Red Onion State Prison deprived him of timely medical treatment. After review of the record, the court must deny defendants' motions seeking dismissal of the action under 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies and Defendant Tate's motion to dismiss.

## I. Background

On July 18, 2012, in the process of transporting Smith to Red Onion State Prison, correctional officers from Wallens Ridge State Prison—Fannon, Ely, and Carico—allegedly beat Smith, sprayed him with pepper spray, and shocked him excessively with an electric stun belt, while yelling threats and racial slurs at him. Two other officers—Combs and Fields—allegedly stood by and watched this use of force and did not intervene.

At Red Onion, Nurse Glenda Tate[1] allegedly looked at Smith's injuries, told him he would live, welcomed him to Red Onion, and provided no medical treatment. Smith also alleges that Nurse Meade misrepresented his injuries in her medical notes and interfered with his attempts to show his injuries to the doctor during his intake medical screening by saying he should sign up for sick call. Smith also complains that on August 7, he reported the July 18 attack to Red Onion Warden Mathena, who said the officers reportedly activated the stun belt because Smith was kicking the transportation van, which Smith denied. Mathena allegedly promised an investigation and medical treatment for Smith's injuries, but no medical treatment was provided at that time. Smith later learned that no investigation had been instigated in 2012.

Before the court are motions for summary judgment under 42 U.S.C. § 1997e(a), filed by Ely, Carico, Fields, Combs, and Mathena, and by Fannon, who is represented by separate counsel. These defendants seek dismissal of Smith's claims for failure to exhaust administrative remedies as required under § 1997e(a). Defendant Tate has filed a motion to dismiss. Smith has responded to defendants' motions, making them ripe for disposition.

## II. Defendants' Motions for Summary Judgment

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. Failure to follow the required procedures of the prison's

---

[1] Smith's complaint refers to this defendant as Nurse Meade, as do other submissions. This opinion will, however, refer to this defendant as Nurse Tate, as reflected in her submissions to the court.

administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar an inmate's § 1983 action. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that inmates in the Virginia Department of Corrections ("VDOC") must follow to comply with § 1997e(a). Inmates are oriented to the steps of this procedure each time they are transferred to a new prison facility. An inmate must first attempt to resolve his issues informally by completing an informal complaint form for which he receives a receipt. As the form itself states, if the inmate does not receive a response to his informal complaint within 15 days, he may file a regular grievance, using his receipt as evidence that he attempted the informal complaint process. A regular grievance must be filed within 30 days of the occurrence. If the grievance is not timely filed, the intake officer will mark "Expired Filing Period" on the back of the form and return it to the filer. If the inmate disagrees with the intake decision, he then has 5 days to appeal to the regional ombudsman, whose decision is final.

Defendants' evidence about the administrative remedy forms Smith has filed at Wallens Ridge and Red Onion is largely undisputed and demonstrates that he did not complete the regular grievance procedure under OP 866.1 as to any of his claims. On August 7, 2012, Smith filed an informal complaint claiming that Fannon had attacked him on July 18, 2012. Although Smith admits that he received a receipt for the informal complaint, which he could have used to file a regular grievance about the assault, Smith did not file a regular grievance at Red Onion in 2012 on that event. Smith filed an informal complaint to Wallens Ridge officials, received December 5, 2012, which complained about Fannon's alleged assault in July 2012. Smith did not file a regular grievance at Wallens Ridge about the assault, however.

3

Similarly, Smith filed an informal complaint on October 25, 2012, about allegedly being denied medical assessment by Tate when he arrived at Red Onion. He did not file a regular grievance in 2012 about Tate's denial of medical care.

In July 2013, Smith filed a civil rights complaint in this court under 42 U.S.C. § 1983, asserting that the defendants' actions on July 18, 2012 had violated his constitutional rights. See Smith v. Ely, Case No. 7:13CV00329. The court summarily dismissed this action without prejudice on October 25, 2013, based on Smith's inaccurate statement in his pleadings that his exhibits proved exhaustion of administrative remedies before filing the lawsuit, as required under 42 U.S.C. § 1997e(a).[2] Smith did not appeal. Smith filed the current lawsuit in April 2014.

As stated, defendants' evidence establishes, and Smith does not deny, that he failed to comply with the time limits of OP 866.1. While nonexhaustion under the PLRA is an affirmative defense, Jones v. Bock, 549 U.S. 199, 212 (2007), a prisoner may survive summary judgment on this ground by demonstrating that the grievance system was not "available" to him—by stating "facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008)). Accordingly, defendants are entitled to summary judgment based on plaintiff's failure to exhaust only if they can "show that the evidence is so one-sided that no reasonable factfinder could find that [the prisoner] was prevented from exhausting his administrative remedies." Hill v. O'Brien, 387 F. App'x 396, 399 (4th Cir. July 12, 2010) (unpublished) (reversing an award of summary judgment against a prisoner who claimed that prison officials had hindered his ability to file administrative grievances); Makdessi v. Clarke, No. 7:11cv262, 2012 WL 293155, at *2 (W.D.

---

[2] "[W]here failure to exhaust is apparent from the face of the complaint," the court may summarily dismiss the complaint on that ground. Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 682 (4th Cir. 2005).

4

Va. Jan. 31, 2012) (noting court's obligation "to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials") (internal quotations and citation omitted).

Smith asserts that the grievance procedures at Red Onion and Wallens Ridge were unavailable to him. Smith states that he was assigned to segregation at Red Onion and was without his personal property for several days, while officials searched it for contraband. In this housing assignment, Smith had no personal access to remedy forms, which supervisors are to provide upon request. Smith states that on July 18, 2012, he asked two different officials for informal complaint forms to protest the excess force and denial of medical treatment, but neither official provided him with forms. He alleges that for the next two weeks, he continued to ask officers, without success, for forms. Once he received his property on August 5, 2012, he allegedly filed the only informal complaint form he had, complaining about the assault. He states that although he received a receipt, officers refused to provide him with a regular grievance form so he could continue the exhaustion procedures within the 30-day deadline under the OP.

Smith also claims that although he asked for additional informal complaint forms from August through October 2012, no officer would provide him forms. On October 25, 2012, Smith filed an informal complaint (allegedly obtained from another inmate), complaining about Nurse Tate's alleged misconduct in July 2012. Once he received a response, he allegedly filed a regular grievance about her actions, but did not receive a receipt or a response. He allegedly asked officers for another regular grievance form, but they said they were too busy to provide him one.

5

After his initial lawsuit about the July 18, 2012 incident was summarily dismissed under § 1997e(a) for failure to exhaust, Smith attempted a new round of informal complaints and grievances. Officials rejected these remedy forms as repetitive or untimely, leaving Smith with no available administrative recourse.

Taking this evidence from Smith's affidavits in the light most favorable to him, as required on summary judgment, the court cannot find that "the evidence is so one-sided that no reasonable factfinder could find that [Smith] was prevented from exhausting his administrative remedies." Hill, 387 F. App'x at 399. Smith affirmatively asserts, with specific facts in support, that prison officials' failure to provide him necessary remedy forms rendered the regular grievance procedure unavailable to him and caused his failure to complete that procedure as required for exhaustion. Because Smith thus presents material facts in dispute on this defense, the court must deny defendants' motions (ECF Nos. 23, 29, & 38) and will not dismiss Smith's claims for failure to exhaust administrative remedies.

### III. Defendant Tate's Motion to Dismiss

#### A. The Allegations

Smith's submissions, taken in the light most favorable to him, present the following factual allegations relevant to his claims against Nurse Tate. On July 18, 2012, at Wallens Ridge, officers beat him, maced him in the face, and shocked him repeatedly with a stun belt so that "it burnt a hole thr[ough] two layers of clothing." (Smith Aff. 2, ECF No. 1-1.) These actions left him with a "busted face, lips, nose and swollen black eyes," a "burning sensation to [his] face and eye" from the mace, and "third degree burnt laceration" to his back from the stun belt. (Id. at 2-3.)

6

When Smith arrived at Red Onion later that day, in full restraints and a spit mask, Tate performed a medical assessment of his condition. Smith told Tate "that he could not see out of his eyes after being spray[ed] with mace," "had been beaten and shocked with the electronic belt," and "need[ed] something for his back." (Id. at 3.) Tate lifted Smith's shirt and looked at "the wound[s]" on his back, and said, "You will live, boy. Welcome to Red Onion." (Id.) Tate did not provide Smith any treatment or medication. Smith attaches a page from his Red Onion medical chart for July 18, 2012, on which Tate noted that she checked Smith's back due to "use of react belt during transportation," and there were "no open areas or redness noted." (Smith Aff. Ex. A, ECF 1-2.)

Dr. Miller examined Smith on July 26, 2012, for his intake assessment, with Tate assisting. Smith told Dr. Miller that he had been beaten and shocked on July 18 without any medical care and asked the doctor to look at the "third degree burnt laceration on [his] back because it may get infected." (Smith Aff. 5-6.) Tate told Dr. Miller that Smith could file a sick call request for treatment of his back. Smith said that Tate had denied him treatment on July 18 and that he had already signed up for sick call without getting any treatment. Dr. Miller replied, "You don't seem to be in any pain now so you can sign up for sick call."[3] (Id. at 6.) The next day, Smith sent two request forms to the medical staff, asking for medical care, but these requests were never answered.

### B. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve <u>contests</u> surrounding the facts, the merits of a claim, or the applicability of defenses."

---

[3] In the medical chart which Smith attached to his complaint, the doctor noted on July 26, 2012, that Smith complained of back pain, but showed "no sign of back pain" during the exam, and was told to "sign up for sick call for any back issues." (Smith Aff. Ex. A, ECF 1-2.)

7

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "[T]he complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations and citations omitted). While the court must view the alleged facts in the light most favorable to the plaintiff, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations and citations omitted) (emphasis added). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, the court must afford liberal construction to the allegations in Smith's pro se pleadings. Brown v. N.C. Dep't. of Corr., 612 F.3d 720, 722 (4th Cir. 2010).

### C. Constitutional Claims

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . as proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976) (internal quotations and citations omitted). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008), and a prison official is "deliberately indifferent" only if he was personally aware of facts indicating a "excessive risk to an inmate's health or safety," actually recognized the existence of such risk, and disregarded or responded unreasonably to that risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official's intentional act or omission that delays an inmate's access to necessary medical care may state a constitutional claim if it caused substantial harm to the patient. Webb

v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citations omitted). Neither the inmate's "disagreement" with a medical judgment over appropriate treatment, nor a medical professional's "inadvertent failure to provide adequate medical care" satisfies the deliberate indifference standard. Estelle, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013).

Smith asserts that Tate violated his rights under the Eighth Amendment and Virginia's negligence standard when she failed to provide treatment for his facial injuries, his smarting eyes, and the open wounds on his back. He alleges that Tate misstated the appearance of Smith's injuries in her medical notes by stating that "the[re] was no open areas or redness," which Smith interprets as her attempt to cover up the officers' unconstitutional acts. (Smith Aff. 4.) Smith also alleges that Tate interrupted Dr. Miller's intake examination so that Smith's "injuries would never be documented" and prevented Smith from getting treatment. (Id. 6.)

Taken in the light most favorable to Smith, the allegations in the complaint are that when he arrived at Red Onion, the wounds on his back presented a need for immediate medical care that was "so obvious that even a lay person would easily recognize the necessity" for such care. Iko, 535 F.3d at 241. Although he told Tate that he had been pepper sprayed and beaten about the face and was in pain, she did not remove the spit mask to examine his injuries or direct the officers to decontaminate him. Furthermore, a week later, Tate allegedly interrupted the doctor's discussion of Smith's back injuries and required Smith to file a sick call request, thus once more preventing Smith from getting prompt treatment for his injuries. Liberally construed, Smith's allegations support a reasonable inference that Tate knew—from the appearance of his injuries and his statements to her—that he had a serious medical need for prompt treatment of those

9

injuries, Webb, 281 F. App'x at 166, but twice delayed prompt treatment and thus prolonged Smith's severe pain,[4] so as to state a plausible claim of deliberate indifference under Estelle and Webb. Iqbal, 556 U.S. at 678. Therefore, the court will grant Tate's motion to dismiss as to Smith's claims under § 1983.

### D. State Law Claims

Smith also asserts a state law claim of "negligence" against Tate. (Compl. 14.) Tate maintains that she is entitled to sovereign immunity against Smith's medical negligence claims. Under certain circumstances, a state employee charged with ordinary negligence in the course of her employment enjoys sovereign immunity against claims for monetary damages. See Whitley v. Commonwealth, 538 S.E.2d 296, 301-02 (Va. 2000) (claims against nurses at a Department of Corrections facility alleging negligence in wrongful death action dismissed under sovereign immunity doctrine). As the moving party, Tate has the burden of proving immunity is warranted by the evidence. Id. Because nothing in the record establishes that Tate is a state employee, she is not entitled to dismissal of Smith's claims on the ground of sovereign immunity.

Tate also maintains that Smith has not complied with the Virginia Medical Malpractice Act. Va. Code § 8.01-581.1. A plaintiff bringing a medical malpractice action under Virginia law must, prior to pursuing service of process, obtain from an expert witness a signed written opinion certifying that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Va. Code § 8.01-20.1. The expert witness statement requirement may be excused, however, where "plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is

---

[4] Smith states that the injuries on his back made daily activities painful, such as showering, dressing, cleaning his cell, or even sleeping. He states that the injuries to his mouth made chewing uncomfortable for months, and the swelling around his eyes affected his vision.

10

unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code § 8.01-20.1. Smith alleges that on July 18, Tate knew, from his statements and from looking his condition, that he had been pepper sprayed and had serious, open burned patches on his back, but offered no treatment then or on July 26. Taking these allegations as true, the court finds that Smith may be able to prove facts to place his claims against Tate within the "common knowledge" exception under § 8.01-20.1.

## IV. Conclusion

For the stated reasons, the court finds that the motions for summary judgment under § 1997e(a) and Defendant Tate's motion to dismiss must be denied. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 5th day of February, 2015.

*/s/ Jon Conrad*
Chief United States District Judge