CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 6 2016

JULIA C. DOOLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **COREY SMITH,** | ) | CASE NO. 7:14CV00168 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| **ELY, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Corey Smith, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims of excessive force or failure to intervene by Defendants Fannon, Ely, Carico, Combs, and Fields, on July 18, 2012, at Wallens Ridge State Prison, and related claims of assault and battery; deliberate indifference to serious medical needs by Defendants Tate and Mathena at Red Onion State Prison; and medical negligence by Tate. The court denied defendants' initial dispositive motions and referred the matter to United States Magistrate Judge Sargent for appropriate proceedings. See 28 U.S.C. § 636(b)(1)(B).

After conducting a two-day court proceeding, no jury trial having been demanded, Magistrate Judge Sargent filed a Report and Recommendation on November 3, 2015. The Report found that the testimony of the defendants' witnesses was more credible and consistent with other evidence, and that Smith's version of events was discredited by the weight of other evidence and testimony presented, including the testimony of his own witnesses. The Report concluded that Smith had not proven by a preponderance of the evidence that he was beaten or otherwise caused injury on July 18, 2012, by any officer at Wallens Ridge; or that he suffered any serious medical need when he encountered Defendants Tate and Mathena at Red Onion. The Report also concluded that defendants had proven by a preponderance of the evidence that Ely's

activation of an electric shock belt on Smith, while a "nontrivial" use of force, constituted a good faith effort to restore order, justified by Smith's disruptive actions inside the transportation van, and that the shock did not cause Smith any injury. Thus, the Report recommended granting judgment for defendants on Smith's Eighth Amendment excessive force and deliberate indifference claims, and his assault and battery and medical negligence claims. Finally, the Report found that Smith did not exhaust administrative remedies before filing the § 1983 action, as required under § 1997e(a), and had not proven by a preponderance of the evidence that any official or prison condition prevented him from doing so.

Smith filed timely objections to the Report that are ripe for decision. He objects to the Report's findings and conclusions on witness credibility, largely reiterating his own testimony and his attempts during trial to discredit the defendants and their witnesses in various ways and to bolster his own witnesses' credibility.

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," the authority and the responsibility to make an informed final determination remains with the district judge. United States v. Raddatz, 447 U.S. 667, 682-83 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).

The court has carefully reviewed Smith's objections and arguments, and pertinent parts of the record, including the exhibits and video footage admitted during trial, and the prison's security policy admitted under seal for in camera review. The court has also conducted de novo review of the witness testimony, as reflected in the unchallenged transcript of the trial testimony, and reviewed Smith's version of events in his prior lawsuit about the same events, Smith v. Ely, No. 7:13CV00329 (W.D. Va. Oct. 25, 2013) (dismissed without prejudice for failure to exhaust administrative remedies).

The weight of the evidence established that on July 17, 2012, some 40 inmates in Smith's housing area (B1 pod) at Wallens Ridge defiantly refused to comply with several orders to return to their cells to be locked down. Prison officials addressed their behavior as a major security incident, vacated all officers from the pod and secured the doors, and notified superior officers up the chain of command. Eventually, the inmates returned to their cells without anyone being harmed or any property being damaged. Inmates Clanton and Corey Smith were identified as having shouted defiant comments and were moved to segregation that night. Both inmates later pleaded guilty to a disciplinary charge for inciting a riot or group demonstration.[1] The next morning, 15 inmates who were slowest to comply with orders to return to their cells were escorted to the recreation yard, loaded onto transportation vans, and transferred to Red Onion.

The weight of the evidence established that because Clanton had been identified as a ringleader of the disturbance, officers placed a stun belt around his waist as a precaution before loading him into one of several compartments on a transportation van. They placed Smith on the

---

[1] Capt. Brown testified that during the inmates' disturbance, Smith looked at Brown and said something like, "We are not going in our fucking cells. We're not locking down." (Tr. 284, Aug. 12, 2015.)

van without incident.² Because Smith had also been identified as a security threat and as a leader in the inmate disturbance, Fannon removed Smith from the van, placed a stun belt on his waist, and returned him to the van compartment beside Clanton. Ely then saw Clanton and Smith kicking and butting their shoulders against the van's compartment doors. He ordered them to stop, but they did not comply. Fearing that damage to the compartments could present security risks of escape, weapon fabrication, or inmate collaboration during the transport, Ely determined that a use of force was warranted and removed from his own belt the remote controls for the inmates' stun belts.

The evidence established that the belts do not activate unless the officer simultaneously presses both of two buttons on the remote, usually using two hands for the procedure. Pressing one button sounds a beep, warning the inmate to stop the disruptive behavior or be shocked. When activated, the belt shocks the inmate for about eight seconds, through two metal points on his lower back. While the device may leave two reddened signature marks on the skin of the inmate's back, none of the defendants had seen the activation of the belt cause burns or cuts to the skin, or leave only one mark.

The evidence established that when Clanton and Smith did not stop their disruption after the beep, Ely pushed the second button also to activate each inmate's stun belt, one time. Thereafter, the inmates stopped kicking, and Ely did not activate the belts again. When officers placed Willie Smith into one of the back compartments on the van, he blocked the door with his

---

² The magistrate judge's report states that Smith testified at one point that before placing him on the van, Ely and Carico took him behind the van and held him, while Fannon slammed his face into the side of the van and punched him in the face numerous times, that Combs and Fields watched without intervening, and that Fannon then placed a stun belt around Smith's waist and returned him to the van with two black eyes and blood dripping from his nose onto his shirt. The court finds that Smith has consistently maintained that Smith initially entered the van without incident and that the alleged assault from Fannon occurred after Fannon removed Smith from the van to place him in the stun belt. The court also finds, however, that Smith's testimony about the officers' assaultive actions outside the van is simply not credible in light of contradictory, more credible testimony and evidence, including the video footage of Smith's arrival at Red Onion. Therefore, the factual discrepancy in the Report to which Smith objects is immaterial to the Report's conclusions, and his objection will be overruled.

feet, despite orders to stop, and ceased only after an officer applied OC spray.[3] The inmates refused an offer for decontamination and did not complain to the van drivers about injury or OC spray effects during the 45-minute ride to Red Onion. Smith later pleaded guilty to a disciplinary charge that he attempted to damage state property, related to the report that he had kicked a transportation vehicle door.

The evidence established that when the van reached Red Onion, officers of that prison unloaded the inmates, strip searched them, placed spit masks on them, had two nurses assess them for any immediate medical needs, placed them in segregation cells, and had a mental health professional interview and assess them for any physical or mental health issues. None of the individuals who had contact with Smith during this process documented that he had any visible injuries or made any verbal complaints of having injuries. Red Onion witnesses established the importance of documenting any injuries on an arriving inmate to ensure that he received any treatment necessary and that he could not later claim receiving such injuries at Red Onion.

The evidence also establishes that Smith did not properly exhaust administrative remedies before filing this lawsuit. Smith's testimony that he could not obtain the necessary forms because officers refused to provide them is simply not credible in light of other, more consistent testimony and evidence that Smith did not diligently pursue the available administrative remedies regarding his claims in this action.

---

[3] Smith testified that once he was returned to the van Ely shocked him multiple times with the stun belt, for no reason, then gave the remote to Fannon, who continued activating Smith's belt multiple times with one hand, while spraying OC spray on Smith and Clanton with the other hand. Smith also testified that he suffered a third-degree, oozing burn wound to his lower back from being shocked by the belt and that he saw this pencil-eraser-sized injury in the mirror once he reached his cell at Red Onion, but no one provided medical attention for the wound. The court finds Smith's testimony about the officers' use of the stun belt and OC spray, and about the injury the belt allegedly caused him, to be completely incredible in light of contradictory evidence about the nature of the belt itself and other witnesses' more credible testimony and contemporaneous documentation.

5

Case 7:14-cv-00168-GEC-PMS   Document 136   Filed 01/26/16   Page 5 of 6   Pageid#: 1548

In light of the evidence noted here and other facts found by the magistrate judge, the court concludes that Smith's objections must be overruled as outweighed or discredited by other evidence in the record, including the video footage admitted into evidence. The court further concludes that the defendants did not violate prison policy or use force unjustifiably against Smith, sadistically and maliciously for the purpose of causing him harm. The court also concludes that Smith did not suffer any injury of legal significance on July 18, 2012,[4] and that the defendants are entitled to judgment on Smith's claims of excessive force, failure to intervene in such force,[5] and deliberate indifference to serious medical needs.

For the reasons stated, the court will adopt the findings and conclusions of the Report, with the additional facts and conclusions herein stated, and will enter judgment for the defendants, as recommended by the Report. An appropriate order will enter this day.

ENTER: This 26th day of January, 2016.

_____
Chief United States District Judge

---

[4] In reaching this conclusion, the court does not minimize the severity of the immediate discomfort and pain an inmate suffers when shocked with an electronic belt even one time. Nevertheless, in Smith's case, one-time use of the device to halt his repeated, disruptive behavior that threatened property damage and security risk, after verbal orders had been ineffective, was simply not disproportionate to the circumstances the officers faced on July 18, 2012.

On the other hand, "[f]orce that imposes serious consequences requires significant circumscription." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, __F.3d__, 2016 WL 105386, at *8 (4th Cir. Jan. 11, 2016) (finding that "tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser" and finding that repeated taser use against resistant, mentally ill individual subject to involuntary commitment order was excessive force in violation of the Eighth Amendment, although officer was entitled to qualified immunity for his actions). Had the weight of the evidence indicated that any officer activated the stun belt on Smith multiple times on July 18, 2012, as Smith alleged, those actions might well have been deemed an unconstitutional use of force against a restrained inmate who was locked inside a transportation van.

[5] See Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203-04 (4th Cir. 2002) (setting standard for bystander liability).